UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MALIK RAHMAN,

                Plaintiff,

-against-

DORA SCHRIRO – COMMISSIONER;
LUIS RIVERA – WARDEN; DEPUTY
WARDEN – RUSSO; DEPUTY OF
SECURITY – PERVUS; CAPTAIN –
LEE; CAPTAIN – LEVY; OFFICER –
OTHMAN,

                Defendants.

OPINION AND ORDER
13-CV-6095 (CS)

Appearances:

Malik Rahman
East Elmhurst, New York
Pro Se *Plaintiff*

Eric Brent Porter
New York City Law Department
New York, New York
*Counsel for Defendants*

Seibel, J.

      Plaintiff Malik Rahman, currently incarcerated at the Anna M. Kross Center ("AMKC") on Rikers Island, brings this *pro se* action pursuant to 42 U.S.C. § 1983 against Commissioner Dora Schriro, Warden Luis Rivera, Deputy Warden Russo, Deputy of Security Pervus, Captain Lee, Captain Levy, and Officer Othman.  Plaintiff alleges that Defendants have violated his constitutional rights by forcing him to go through a radiation-emitting X-ray security screening machine in order to get to and from his daily work assignment.  Defendants now move under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the claims against them.  For the reasons set forth below, Defendants' motion is granted in part and denied in part.

I. **BACKGROUND**

Plaintiff is a pretrial detainee currently in the custody of the New York City Department of Correction at AMKC on Rikers Island. (Complaint ("Compl."), (Doc. 2), 25.) On or about May 14, 2013, Defendants placed a full-body X-ray screening machine called the RadPro SecurPass ("SecurPass") in the intake area of AMKC. (*Id*. at 9.) Since the SecurPass was installed, Plaintiff has been forced to undergo an X-ray scan each time he goes to or from his work assignment in the facility's law library. (*Id*.) Because Plaintiff works one daily shift in the law library, he is required to pass through the SecurPass at least twice each day. (*Id*.) Inmates are issued disciplinary infractions if they refuse to be scanned. (*Id*.)

The SecurPass, like all X-ray devices, produces radiation. (*Id*.) Radiation breaks chemical bonds in the cells of the human body and can cause several negative health effects. (*Id*. at 13.) The following facts concerning the health effects of radiation are taken from the complaint Plaintiff filed on August 28, 2013, and are accepted as true for the purposes of this motion. As will be discussed below, discovery may reveal that the device in question does not actually present a significant risk of causing these effects.

The type and probability of the effects produced by radiation generally depend on the dose received. (*Id*. at 14.) At high doses, radiation causes "threshold effects," that is, effects that arise soon after an individual is exposed to a threshold level of radiation. (*Id*.) These threshold effects include radiation sickness, cataracts, and sterility. (*Id*.) Moreover, radiation causes complications that do not appear until long after exposure; these complications are called "non-threshold effects." (*Id*.) It is assumed that there are no threshold doses for these effects and that any radiation exposure can increase a person's chances of experiencing non-threshold effects. (*Id*.) The most common non-threshold effect of radiation exposure is cancer. (*Id*. at 15.)

Scientists believe that even low doses of radiation lead to increased cancer risks and that the degree of risk is directly proportional to the size of the dose. (*Id*.)

Due to his fear of suffering these health effects, Plaintiff submitted an inmate grievance in which he explained his concerns regarding his daily exposure to radiation, requested a medical examination, and asked for a written document exempting him from SecurPass scans. (*Id*. at 10.) At the time his complaint was filed, Plaintiff had not received a response to his grievance. (*Id.*) Plaintiff also notified both Captain Lee and Captain Levy that he believed the SecurPass to be dangerous, and both officers told Plaintiff that he was required to continue undergoing X-ray scans. (*Id.*) When Plaintiff notified Officer Othman of his concerns, Officer Othman made derogatory remarks towards Plaintiff and "turned the Dose Rating level up" while Plaintiff passed through the machine. (*Id.*)

On August 28, 2013, Plaintiff filed this action alleging that his repeated exposure to radiation poses an unreasonable risk of future health effects, including cancer and sterility. On December 2, 2013, Defendants filed this motion to dismiss the complaint, (Doc. 15), arguing that: (1) Plaintiff has failed to state a claim upon which relief may be granted, because he cannot satisfy the objective prong of the deliberate indifference test and does not sufficiently allege any causal connection between the SecurPass and his claimed injury; (2) Defendants are entitled to qualified immunity; and (3) the Prison Litigation Reform Act ("PLRA"), 42 U.S.C § 1997e(e), bars receipt of damages for emotional injuries.

## II. DISCUSSION

   A. *Applicable Legal Standard on Motion to Dismiss*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679.  Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

*Pro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  But while pleadings of a *pro se* party should be read "to raise the strongest arguments [that they] suggest," *Walker v. Schult*, 717 F.3d 119, 124

4

(2d Cir. 2013) (internal quotation marks omitted), dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements, *see Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997).

    B.  *Documents Considered on a Motion to Dismiss*

Defendants seek consideration of two documents in support of their motion to dismiss. When deciding a motion to dismiss, the Court's "review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d. Cir. 2007). The court may also rely on matters of public record, such as judicial documents and official court records, in deciding whether to dismiss a complaint. *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998). Finally, the Court may rely on documents "integral" to the complaint. *See Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (court may properly consider documents "integral" to complaint, documents relied upon in drafting complaint, certain public disclosure documents, and facts of which judicial notice may be taken). A document is considered "integral" to the complaint "where the plaintiff has relied on the terms and effect of the document in drafting the complaint." *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 244 (S.D.N.Y. 2011) (alterations and internal quotation marks omitted). If matters outside the pleadings are presented in a motion to dismiss, those matters must either be excluded or the motion must be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d).

Defendants have submitted, as Exhibit A, a fact sheet on radiation published on the website of the Environmental Protection Agency ("EPA"). (Porter Decl. Ex. A.)[1] Because the

---

[1] "Porter Decl." refers to Declaration of Eric Porter in Support of Defendants' Motion to Dismiss. (Doc. 17.)

Court is permitted to take judicial notice of United States government publications, I will consider Exhibit A in deciding this motion. *See Sekisui Am. Corp. v. Hart*, No. 12-CV-3479, 2014 WL 687222, at *2 n.29 (S.D.N.Y. Feb. 21, 2014) (taking judicial notice of "FDA publication available on its website")[2]; *Brooklyn Heights Ass'n v. Nat'l Park Serv.*, 777 F. Supp. 2d 424, 432 n.6 (E.D.N.Y. 2011) ("[T]he Court may take judicial notice of the [Brooklyn Bridge Park] website, which is a government publication."). The copy of the SecurPass brochure submitted by Defendants as Exhibit B, however, must be excluded. (Porter Decl. Ex. B.) Plaintiff did not incorporate or rely on the document in drafting his complaint, and Exhibit B does not refer to matters of public record the accuracy of which is reasonably unquestioned. *See Moore U.S.A., Inc. v. Standard Register Co.*, 139 F. Supp. 2d 348, 363 (W.D.N.Y. 2001) ("[C]ourts that consider matters of public record in a Rule 12(b)(6) motion are limited to things such as statutes, case law, city charters, city ordinances, criminal case dispositions, letter decisions of government agencies, published reports, records of administrative agencies, or pleadings in another action.").[3]

   C.  Section 1983 Claims for Pretrial Conditions of Confinement

Section 1983 allows an individual to bring suit against persons who, acting under color of state law, have "depriv[ed him] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988). The statute "itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Okla. City v. Tuttle,* 471 U.S. 808, 816 (1985)). To state a claim for relief

---

[2] Copies of all unpublished decisions cited herein will be sent to Plaintiff.
[3] Moreover, while counsel's declaration avers that the brochure came from the manufacturer's website and I therefore presume its authenticity, if I were to consider it not simply for the fact that the statements in it were made, but for the truth of those statements, I would need the declaration of someone who could swear to its truth.

under § 1983, therefore, a plaintiff must plausibly allege the violation of a right protected under the Constitution or federal law. *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

While a convicted prisoner's claim that particular conditions of his confinement violate the Constitution is analyzed under the Eighth Amendment proscription of cruel and unusual punishment, that prohibition does not apply to pretrial detainees, who may not be "punished" prior to an adjudication of guilt. *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009); *see Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996). Instead, a pretrial detainee held in state custody receives protection against dangerous prison conditions under the Due Process Clause of the Fourteenth Amendment. *Caiozzo*, 581 F.3d at 69. In this context, the standards for establishing a constitutional violation under the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment are identical. *Id*. at 70-72 ("Claims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment."); *United States v. Walsh*, 194 F.3d 37, 47-48 (2d Cir. 1999) (standard for excessive force claims arising under Eighth Amendment also applies to claims brought under Fourteenth Amendment).

D. *Deliberate Indifference to a Risk of Harm to Future Health*

"To establish a [constitutional] violation based on a claim that a prison official placed an inmate's health in danger, . . . the inmate must show that the prison official acted with 'deliberate indifference' to 'a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year.'" *Florio v. Canty*, 954 F. Supp. 2d 227, 233 (S.D.N.Y. 2013) (quoting *Helling v. McKinney*, 509 U.S. 25, 33 (1993)). This deliberate indifference standard is evaluated under a two-pronged test comprised of both objective and

subjective components.  *Id.* at 233-34 (citing *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)); *Jackson v. Goord*, 664 F. Supp. 2d 307, 315-16 (S.D.N.Y. 2009) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  First, "the deprivation alleged must be, objectively, sufficiently serious."  *Farmer*, 511 U.S. at 834 (internal quotation marks omitted).  Second, "a prison official must have a sufficiently culpable state of mind."  *Id*. (internal quotation marks omitted); *see Trammell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003); *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001).  In this motion to dismiss, Defendants assert that Plaintiff has not plausibly alleged that the objective prong is satisfied or that any risk of future harm to Plaintiff's health is causally connected to use of the SecurPass.

Under the objective prong of the deliberate indifference test, "the measure of a 'sufficiently serious' deprivation is 'contextual and responsive to contemporary standards of decency.'"  *Jackson*, 664 F. Supp. 2d at 316 (quoting *Hudson v. McMillian,* 503 U.S. 1, 8 (1992)).  For a claim based on an inmate's exposure to a harmful substance, the plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm."  *Farmer*, 511 U.S. at 834.  This inquiry "focuses on the danger posed by the material itself – that is, whether the nature and levels of plaintiff's exposure . . . [were] such as to pose 'an unreasonable risk' of serious damage to [his] health."  *Jackson*, 664 F. Supp. 2d at 316 (quoting *Helling*, 509 U.S. at 36); *see Wright v. N.Y.S. Dep't of Corr. Servs*., No. 06-CV-3400, 2008 WL 5055660, at *10 (S.D.N.Y. Oct. 10, 2008) ("Exposure to unsafe levels of toxic substances, such as tobacco smoke or asbestos, may suffice as sufficiently dangerous conditions to satisfy the objective element of an Eighth Amendment claim.").  Inmates therefore do not have an unqualified constitutional right to an environment free of all harmful substances, but only a right to be free of involuntary exposure to a level of such substances which unreasonably endangers their future

health.  *See Enigwe v. Zenk*, No. 03-CV-854, 2007 WL 2713849, at *5 (E.D.N.Y. Sept. 14, 2007) ("Inmates do not have a constitutional right to be free of any or all levels of exposure to [environmental tobacco smoke], but only unreasonable levels of exposure.").  In determining whether a risk of harm is unreasonable, a court must assess whether the risk is "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling*, 509 U.S. at 36 (emphasis in original).

Where a plaintiff plausibly alleges that prison officials acted with deliberate indifference to a substantial risk of serious harm posed by involuntary exposure to an unsafe condition, the inmate need not have suffered actual injury to state a constitutional violation.  *See id.* at 33 ("It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them."); *see also Warren v. Keane*, 196 F.3d 330, 332 (2d Cir. 1999) ("In *Helling,* the Court held that the Eighth Amendment prohibits prison officials from exhibiting deliberate indifference to future health problems that an inmate may suffer as a result of current prison conditions . . . ."); *LaBounty v. Coughlin*, 137 F.3d 68, 72-73 (2d Cir. 1998) (exposure to friable asbestos can violate the Eighth Amendment); *Pack v. Artuz*, 348 F. Supp. 2d 63, 73 (S.D.N.Y. 2004) ("In other words, plaintiff need not show that he suffered actual injury in order to satisfy the objective prong of his Eighth Amendment claim . . . .").  Indeed, the Supreme Court has held that the Constitution prohibits prison officials from exhibiting deliberate indifference to serious health risks, even where the inmate "shows no serious current symptoms." *Helling*, 509 U.S. at 33; *see Warren*, 196 F.3d at 332-33.  Thus, a plaintiff states a cause of action by alleging that defendants have, with

deliberate indifference, exposed him to a condition that "'pose[s] an unreasonable risk of serious damage to his future health.'" *Warren*, 196 F.3d at 333 (quoting *Helling*, 509 U.S. at 35).

Plaintiff alleges that he is subjected to at least two SecurPass scans each day, and that each scan exposes him to a level of radiation that is ten to fifty times higher than that emitted by the full-body scanners in use at airports. (Compl. 9-10.) He further alleges that radiation damages the cells of the human body and that even low doses of radiation increase an individual's risk of cancer. (*Id.* at 14-15.) Finally, Plaintiff alleges that, due to safety concerns, federal regulations prohibit prison officials from using even non-repetitive X-ray examinations for security purposes unless the device is operated by a licensed practitioner and there exists reasonable suspicion that the inmate has recently secreted contraband. (*Id.* at 27.) While these allegations do not establish that repetitive exposure to the radiation dose emitted by the SecurPass is in fact harmful, they do "suggest with sufficient plausibility that Plaintiff may be able to demonstrate through discovery that a serious present injury or a future risk of serious injury exists." *Braxton v. Nichols*, No. 08-CV-8568, 2010 WL 1010001, at *5 (S.D.N.Y. Mar. 18, 2010) (citing *Davis v. New York*, 316 F.3d 93, 100-01 (2d Cir. 2002)).

Plaintiff has also plausibly alleged that any risk of future harm to which he is subjected is causally connected to his exposure to radiation through SecurPass scans. Because exposure to an unreasonable *risk* of future harm is itself actionable, it is irrelevant for purposes of Plaintiff's claims that his health problems are mere possibilities that may arise at some unspecified time in the future. *See Helling*, 509 U.S. at 33 (exposure to infectious disease may violate the Constitution, even where it is not "alleged that the likely harm would occur immediately and even though the possible infection might not affect all of those exposed"); *Baur v. Veneman*, 352 F.3d 625, 633 n.7 (2d Cir. 2003) ("[T]he Supreme Court's analysis in both *Helling* and *Metro–*

*North* displays a willingness . . . to conceptualize exposure to enhanced risk as a type of cognizable injury."). Plaintiff provides plausible factual support for his allegation that exposure to radiation causes cancer and other health problems, and he alleges that he is regularly exposed to unsafe levels of radiation through SecurPass screenings. Defendants' argument that Plaintiff's claimed injury is somehow speculative or unconnected to his exposure to the SecurPass is therefore without merit.

### E. Excessive Force

Plaintiff's allegation that Defendant Othman intentionally subjected him to a SecurPass scan on a higher "dose rating level" than normal should be liberally construed as an excessive force claim. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (*pro se* submissions should be read with special solicitude and "interpreted to raise the strongest arguments that they suggest") (internal quotation marks omitted). In determining whether the use of force against an inmate is justified under the Due Process Clause of the Fourteenth Amendment, as in claims based on deliberate indifference to an inmate's health, courts must apply a two-pronged test comprised of both subjective and objective factors.

The "core judicial inquiry" as to the subjective prong is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. As for the objective portion of the test, while an inmate is not required to show that he suffered any significant injury in order to state a claim for excessive force, he must show "that the conduct alleged is 'sufficiently serious' to reach constitutional dimensions." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Farmer*, 511 U.S. at 834). This inquiry is focused not on the injury caused, but on the force applied. *See Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("Injury and force . . . are only imperfectly correlated, and it is the latter that

11

ultimately counts."). Thus, "[w]hile *de minimis* uses of force are necessarily excluded from constitutional recognition, when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident." *Hogan*, 738 F.3d at 515 (internal quotation marks, citations, and alterations omitted).

By claiming that Defendant Othman intentionally subjected Plaintiff to a higher dose of radiation while calling him a "fake [M]uslim, homo[]sexual, faggot," (Compl. 10), Plaintiff has plausibly alleged that the subjective prong of the excessive force standard is met, *see Cole v. Fischer*, 379 F. App'x 40, 42 (2d Cir. 2010) (summary order) (for purposes of motion to dismiss, allegations that officer made racially and religiously derogatory remarks supported inference that force was not applied in good-faith effort to maintain discipline). "But even when a prison official acts maliciously and sadistically, 'not every push or shove . . . violates a prisoner's constitutional rights.'" *Abreu v. Nicholls*, 368 F. App'x 191, 193 (2d Cir. 2010) (summary order) (quoting *Sims v. Artuz,* 230 F.3d 14, 22 (2d Cir. 2000)). The relevant inquiry then shifts to whether Defendant Othman's use of force was more than *de minimis*, *see id*., and if not, whether it was nonetheless "repugnant to the conscience of mankind" such that it violates "contemporary standards of decency," *Hudson*, 503 U.S. at 9-10; *see Hogan*, 738 F.3d at 516 ("Even if we were to assume *arguendo* that the physical force allegedly used was *de minimis* . . . spraying an inmate with vinegar, excrement, and machine oil in the circumstances alleged here is undoubtedly repugnant to the conscience of mankind and therefore violates the Eighth Amendment.") (internal quotation marks omitted).

Here, Defendant Othman allegedly subjected Plaintiff to a single increased dose of radiation that still amounted only to "a fraction of the radiation received in a chest X-ray or

12

cross-country flight." (Compl. 21.)  Thus, while Plaintiff has plausibly alleged that repeated exposure to this dose of radiation may pose an unreasonable risk to future health, intentionally exposing an inmate to a single dose of radiation smaller than that received in a cross-country flight is a trivial, *de minimis* application of force.  Furthermore, turning the SecurPass to a higher setting is designed to produce a better image.  (*Id.*)  Use of the higher setting in this situation, when an inmate expresses resistance to the scanning process and could conceivably be hiding contraband, is not the type of force repugnant to the conscience of mankind.  *See Hudson*, 503 U.S. at 10.  The force exerted on Plaintiff by the setting of SecurPass to a higher dose rating on a single occasion therefore does not rise to the level of a constitutional violation.

   F. *Qualified Immunity*

   Defendants also argue that they are protected by the doctrine of qualified immunity, which shields prison officials from liability arising from the performance of their official functions when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  The Second Circuit has held that a right is clearly established for qualified immunity purposes if "(1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003) (internal quotation marks and alterations omitted).  Because qualified immunity "'is in part an entitlement not to be forced to litigate,' early resolution of the qualified immunity defense is encouraged." *Vincent v. Yelich*, 718 F.3d 157, 166-67 (2d Cir. 2013) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526-27 (1985)).  For purposes of a motion to dismiss, an official is entitled to qualified immunity if it is clear from the face of the complaint "(1) that

his conduct did not violate the plaintiff's 'clearly established rights' or (2) that a reasonable person in the defendant's position could have believed, in view of all of the pertinent circumstances, that his conduct did not violate such a right." *Wesley v. Muhammad*, No. 05-CV-5833, 2008 WL 123812, at *9 (S.D.N.Y. Jan. 10, 2008) (citing *Kerman v. City of N.Y.*, 374 F.3d 93, 108-09 (2d Cir. 2004)).

Defendants allege that they are immune from suit because there is no clearly established law prohibiting X-ray scans of inmates. Plaintiff's claim arises not from the narrow right for inmates not to be subjected to X-ray scans, however, but from "a broader right to be free from deliberate indifference to serious medical needs" that was clearly established "as far back as 1976 by *Estelle v. Gamble*, 429 U.S. 97 (1976)." *Warren*, 196 F.3d at 333 (internal quotation marks omitted). Later holdings from both the Supreme Court and the Second Circuit clearly established that repeated exposure to harmful levels of cancer-causing substances violates this right. *See Helling*, 503 U.S. at 36; *Warren*, 196 F.3d at 333; *LaBounty*, 137 F.3d at 74. Given the known dangers of radiation, a reasonable person would have understood that exposing an inmate to a cumulative level of radiation that poses a risk of damage to his future health (which risk I must assume to exist at this stage) could violate the Due Process Clause of the Fourteenth Amendment. Commissioner Schriro, who Plaintiff alleges set the policy of subjecting inmates to regular SecurPass scans, is therefore not entitled to qualified immunity at this stage.

By contrast, the officers who implemented that policy – Defendants Lee, Levy, and Othman – are immune from suit on the basis that an officer in their positions could reasonably have believed that his or her conduct did not violate Plaintiff's rights. While an officer is not entitled to qualified immunity where he or she follows an order to carry out blatantly illegal actions, "'[p]lausible instructions from a superior or fellow officer support qualified immunity

14

where, viewed objectively in light of the surrounding circumstances, they could lead a reasonable officer to conclude that the necessary legal justification for his actions exists.'" *Anthony v. City of N.Y.*, 339 F.3d 129, 138 (2d Cir. 2003) (quoting *Bilida v. McCleod,* 211 F.3d 166, 174-75 (1st Cir. 2000)); *see Moskowitz v. Coscette*, 51 F. App'x 37, 38 (2d Cir. 2002) (summary order) ("[T]he fact that a police officer acts pursuant to orders can bolster a qualified immunity defense where the officer could reasonably have believed that he was not violating any rights."); *Kraft v. City of N.Y.*, 696 F. Supp. 2d 403, 420 (S.D.N.Y. 2010) (reliance on an "apparently valid" order supports finding of qualified immunity).

   Here, the order to X-ray all inmates entering the intake area of AMKC was facially valid. A reasonable correction officer would likely know that case law has consistently upheld the constitutionality of prison searches that are arguably more intrusive than an X-ray scan – such as strip-searches – when conducted for the legitimate purpose of maintaining prison security. *See, e.g., Florence v. Bd. of Chosen Freeholders*, 132 S. Ct. 1510 (2012). Moreover, the complaint does not plausibly suggest that a reasonable officer would believe that the SecurPass, a machine approved for use by his superiors, emits potentially unsafe levels of radiation. Without possessing information regarding the quantity of radiation emitted by the SecurPass, an officer in the position of Defendants Lee, Levy, and Othman would likely believe that the SecurPass is indistinguishable from the X-ray scanning machines widely in use at airports, government buildings, and other public places. (Compl. 18-21.) Furthermore, Defendants Lee, Levy, and Othman were entitled to rely on the facially valid orders of their superiors even after Plaintiff informed them of his belief that the SecurPass is dangerous, as an objectively reasonable officer would not be expected to exempt an inmate from a security screening merely because the inmate

15

claimed that the screening procedure was dangerous. Plaintiff's claims against Defendants Lee, Levy, and Othman are therefore dismissed under the doctrine of qualified immunity.

Defendants also contend that Defendants Rivera, Russo, and Pervus are entitled to qualified immunity. It is unnecessary for the Court to decide this issue, however, because Plaintiff fails to allege that any of these defendants was personally involved in the claimed constitutional violation. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Plaintiff does not allege that Defendants Rivera, Russo, and Pervus directly participated in either the adoption or the implementation of the SecurPass screening policy. Where, as here, a plaintiff names a defendant in the caption, but the complaint contains no substantive allegation against the defendant, dismissal of the complaint is appropriate. *See Garcia v. Watts*, No. 08-CV-7778, 2009 WL 2777085, at *13 (S.D.N.Y. Sept. 1, 2009); *see also Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (mere "linkage in the prison chain of command" does not show personal involvement). Plaintiff's claims against these defendants are therefore dismissed without prejudice. If Plaintiff's complaint survives the motion for summary judgment to follow the limited discovery described below, Plaintiff may amend the complaint, if he can, to allege facts showing that Defendants Rivera, Russo, and Pervus were personally involved in the alleged constitutional deprivations.

G.  *PLRA Bar on Receipt of Damages for Mental and Emotional Injury*

Under the PLRA, a prisoner bringing a federal civil action cannot recover damages "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Because § 1997e(e) operates "as a limitation on recovery of damages . . . in the absence of a showing of physical injury, it does not restrict a plaintiff's ability to recover compensatory damages for actual injury, nominal or punitive damages, or injunctive and

declaratory relief." *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002). Because Plaintiff demands injunctive relief, nominal damages, and punitive damages, (Compl. 16), dismissal of his claims "is not a proper remedy for a failure to allege physical injury," *McGarry v. Pallito*, No. 09-CV-128, 2013 WL 3338682, at *6 (D. Vt. July 2, 2013). The only issue at this point, therefore, is whether the PLRA bars Plaintiff from asserting a claim for compensatory damages.

      The PLRA's limitation on recovery of damages does not apply where the claim asserted is not one for mental or emotional injury. While Plaintiff does allege that he suffers from "emotional distress" and "an intense mental reaction," (Compl. 10-11), these are not his only claimed injuries. *Cf. Thompson*, 284 F.3d at 419 (noting district court could have dismissed complaint if plaintiff sought "damages solely for an emotional injury without any claim of physical injury"). Indeed, the complaint makes clear that Plaintiff's claims are based on the increased risk of future health effects caused by radiation exposure. "[A] serious risk of future injury of the type at issue in *Helling* is plainly not a 'mental or emotional injury' . . . . It is a serious risk of a future *physical* injury, such as cancer." *Enigwe v. Zenk*, No. 03-CV-854, 2006 WL 2654985, at *5 (E.D.N.Y. Sept. 15, 2006) (Second Circuit has continued to apply *Helling* following enactment of § 1997e(e)); *see Crawford v. Artuz*, No. 98-CV-0425, 1999 WL 435155, at *6 (S.D.N.Y. June 24, 1999) (claim based on risk of future harm caused by asbestos exposure is not claim for mental or emotional injury). *But see Zehner v. Trigg*, 133 F.3d 459, 460-61 (7th Cir. 2007) (§ 1997e(e) bars damages award for mental and emotional injuries resulting from asbestos exposure). Section 1997e(e) therefore does not limit Plaintiff's ability to recover compensatory damages for a serious risk of future physical harm.

      To the extent that Plaintiff also demands compensatory damages for claims based on emotional and mental injuries, he may not do so absent a showing of physical injury, but the

Court cannot say at this stage that Plaintiff will not be able to make such a showing. *See Malik v. City of N.Y.*, No. 11-CV-6062, 2012 WL 3345317, at *16 (S.D.N.Y. Aug. 15, 2012) ("[A] plaintiff need not plead physical injury in a complaint covered by the PLRA."); *Frieson v. City of N.Y.*, No. 11-CV-4611, 2012 WL 1948782, at *2 (S.D.N.Y. May 30, 2012) ("[A]t the motion to dismiss stage, the Court cannot . . . conclusively resolve the factual question of whether or not the plaintiff suffered physical injury in addition to his claimed mental and emotional injury.").

### H. Limited Discovery on Objective Prong of Deliberate Indifference Test

As stated above, Defendants have attached to this motion to dismiss two documents, Exhibit A and Exhibit B, in support of their argument that Plaintiff has failed to meet the objective prong of the deliberate indifference test. While the Court did not consider Exhibit B for the purposes of this motion, the two documents, when considered together, appear to suggest that the SecurPass does not in fact emit dangerous levels of radiation.[4]  Because this issue is potentially dispositive, the Court orders the parties to first engage in a sixty-day period of discovery limited to the issue of whether the radiation dose emitted by the SecurPass presents a substantial risk of serious harm to Plaintiff's future health. At the close of that discovery period, Defendant Schriro may make a motion for summary judgment.[5]  If any part of the case remains viable following that summary judgment motion, the parties shall have the ability to conduct full discovery (under the supervision of Magistrate Judge Davison). The schedule is as follows:

1. Limited discovery to be completed by July 31, 2014.
2. Defendant Schriro's motion for summary judgment to be filed by August 29, 2014.

---

[4] According to the documents, 1,000 annual screens by the SecurPass would expose an individual to about the same extra annual amount of radiation that a resident of Denver experiences as opposed to someone who lives at sea level, and less radiation than a single mammogram. (*See* Porter Decl. Ex. A, at 3 (listing radiation exposure for mammogram and individuals living in Denver and at sea level); *id.* Ex. B, at 2 (listing radiation exposure for SecurPass screening).)

[5] This Court will send Plaintiff the portions of the Southern District of New York *Pro Se* Manual dealing with discovery and motions for summary judgment.

3. Plaintiff's opposition to be filed by September 30, 2014.

4. Defendant Schriro's reply to be filed by October 14, 2014.

## III. CONCLUSION

For the above reasons, the Defendants' motion to dismiss is granted in part and denied in part. Plaintiff's excessive force claim is dismissed for failure to state a claim upon which relief may be granted, and Plaintiff's claims against Defendants Lee, Levy, and Othman are dismissed under the doctrine of qualified immunity. Plaintiff's claims against Defendants Rivera, Russo, and Pervus are dismissed without prejudice to Plaintiff's right to amend the complaint at a later date to allege their personal involvement. In all other respects, the motion is denied. The Clerk of Court is respectfully requested to terminate the pending motion. (Doc. 15.)

**SO ORDERED.**

Dated: May 27, 2014
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J