UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

IN RE:                                                                    **OPINION AND ORDER**

RADPRO SECURPASS SCANNER CASES.                    Nos. 13-CV-6095 (CS) (Lead)
                                                                                  13-CV-8441 (CS)

------------------------------------------------------------------------x

ISAAC MIDDLETON,

                        Plaintiff,

        - against -

THE CITY OF NEW YORK, DORA B. SCHRIRO
(COMMISSIONER),

                        Defendants.
------------------------------------------------------------------------x

Appearances:
Isaac Middleton
Brooklyn, New York
*Plaintiff Pro Se*

Eric B. Porter
Assistant Corporation Counsel
Corporation Counsel of the City of New York
New York, New York
*Counsel for Defendants*

Seibel, J.

      Plaintiff Isaac Middleton, who was incarcerated at the Anna M. Kross Center ("AMKC") on Rikers Island when he filed this Complaint, brings this *pro se* action pursuant to 42 U.S.C. § 1983 against Commissioner Dora B. Schriro and the City of New York.  Plaintiff alleges that Defendants violated his constitutional rights by forcing him to go through a radiation-emitting X-ray security screening machine during his incarceration at AMKC.  Defendants now move under

Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the claims against them.  For the reasons set forth below, Defendants' Motion is granted.

I.     BACKGROUND

When Plaintiff filed this Complaint, he was a prisoner in the custody of the New York City Department of Correction at AMKC on Rikers Island.  (Complaint ("Compl."), (Doc. 2), 1-2.)  Plaintiff alleges that each time he entered or exited that facility, he was required to pass through a full-body X-ray screening machine called the RadPro SecurPass ("SecurPass").  (Compl. at 3.)  Plaintiff states that he was scanned by the SecurPass five times in total:  on August 22, 2013, October 1, 2013, October 2, 2013, and twice on September 4, 2013.  (*Id*. at 2.)  After reading an article about the negative health effects potentially caused by X-ray screening devices, Plaintiff became frightened that SecurPass scans were causing physical damage to his body.  *See* Michael Grabell, *Drive-by Scanning: Officials Expand Use and Dose of Radiation for Security Screening*, PROPUBLICA (Jan. 27, 2012, 9:30 AM), http://www.propublica.org/article/drive-by-scanning-officials-expand-use-and-dose-of-radiation-for-security-s ("Grabell") (last visited Aug. 11, 2014).  The following facts concerning the SecurPass and the health effects of radiation are taken from that article (which the Court can consider in connection with the instant Motion, as discussed below) and the Complaint Plaintiff filed on November 22, 2013, and are accepted as true for the purposes of this Motion.

The SecurPass, like all X-ray devices, produces radiation.  (Grabell at 4.)  At high dosages, radiation "has been shown to damage DNA and mutate genes," and exposure to radiation can potentially cause cancer.  (*Id*. at 2.)  "A comprehensive study by the National Academy of Sciences concluded that the more radiation a person gets, however little at a time, the greater their [*sic*] lifetime risk of dying from cancer."  (*Id*.)  The SecurPass emits a radiation

dose that, while "still a fraction of the radiation received in a chest X-ray or cross-country flight," is ten to fifty times higher than that of the full-body X-ray scanners in use at airports. (*Id*. at 4.)  Manufacturers of X-ray security scanning devices contend that this level of radiation is "trivial" in comparison to that absorbed by humans from naturally-occurring, background sources.  (*Id*. at 2.)

Plaintiff alleges that exposure to high levels of radiation through SecurPass scans "truly hurt[s]" him and is causing him to suffer a "slow death" due to damaging genetic mutation. (Compl. at 3.)  He further alleges that the correction officers responsible for operating the SecurPass are verbally abusive towards the inmates being scanned.  (*Id*.)  Plaintiff filed two inmate grievances with AMKC officials in which he explained his concerns regarding the dangers of radiation exposure, but he did not receive a response to either grievance.  (*Id*. at 5.)

On November 22, 2013, Plaintiff filed this action alleging that exposure to radiation poses unreasonable risks to his future health, including the possibility of cancer.  Defendants filed the instant Motion to Dismiss, (Doc. 12), on April 8, 2014, arguing that:  (1) Plaintiff does not state a claim under the Eighth or Fourteenth Amendments, and (2) the relief Plaintiff requests is unavailable to him as a matter of law.  (*See* Ds' Mem. 6-10, 12.)[1]  Plaintiff has not filed any opposition to Defendants' motion.

## II.   DISCUSSION

### A.  *Legal Standard*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim

---

[1] "D's Mem." refers to Memorandum of Law in Support of Defendants' Motion to Dismiss.  (Doc. 13.)

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id*. at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

Because Plaintiff is proceeding *pro se*, the Court must read his Complaint "liberally" and interpret it "to raise the strongest arguments" that it may suggest. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). "Dismissal of a *pro se* complaint is nevertheless appropriate where a

plaintiff has clearly failed to meet minimum pleading requirements." *Carvel v. Ross*, No. 09-CV-722, 2011 WL 856283, at *8 (S.D.N.Y. Feb. 16, 2011).[2]

Plaintiff's failure to oppose Defendants' Rule 12(b)(6) motion does not by itself merit dismissal of his Complaint. *See Goldberg v. Danaher*, 599 F.3d 181, 183-84 (2d Cir. 2010); *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000). When presented with an unopposed motion, the Court is obligated to review the record and determine whether there are sufficient bases for granting the motion. *McCall*, 232 F.3d at 322-323. Accordingly, in deciding an unopposed motion to dismiss, a court is to "assume the truth of a pleading's factual allegations and test only its legal sufficiency," according to the principles above. *Id.* at 322.

## B. *Documents Considered on a Motion to Dismiss*

When deciding a motion to dismiss, the Court's "review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court may also rely on matters of public record, including official United States government publications. *See Brooklyn Heights Ass'n v. Nat'l Park Serv.*, 777 F. Supp. 2d 424, 432 n.8 (E.D.N.Y. 2011) ("[T]he Court may take judicial notice of the [Brooklyn Bridge Park] website, which is a government publication."); *Zappier v. Sun Life Assur. Co. of Canada*, No. 05-CV-5300, 2006 WL 2621110, at *8 n.12 (S.D.N.Y. Aug. 10, 2006) ("[T]he Court clearly can take judicial notice of the [United States Department of Labor's Dictionary of Occupational Titles], which is a United States government publication."). Finally, the Court may rely on documents "integral" to the complaint. *See Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (court may properly consider documents

---

[2] Copies of all unpublished decisions cited in this Opinion will be mailed to Plaintiff.

"integral" to complaint, documents relied upon in drafting complaint, public documents, and facts of which judicial notice may be taken). If other sorts of documents are presented on a motion to dismiss, either they must be excluded or the motion must be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d).

Plaintiff alleges that he learned of the potentially damaging health effects of SecurPass scans by reading an article published on ProPublica.org ("ProPublica"). (Compl. at 3.) Plaintiff provides an incomplete URL for the article and does not attach it to the Complaint. In presenting his claims, however, Plaintiff refers to the content of the ProPublica article, stating, "as you read about this device it will tell all the effects of damages it does to the physical body . . . ." (*Id.*) Because Plaintiff explicitly referred to and relied on the article in his Complaint, the Court may consider the ProPublica article when deciding Defendants' Motion to Dismiss. *See Tyler v. Liz Claiborne, Inc.*, 814 F. Supp. 2d 323, 341 n.16 (S.D.N.Y. 2011) (considering content of articles published in *Fortune* and the *Wall Street Journal* for purposes of a motion to dismiss because articles were incorporated by reference); *Triano v. Gannett Satellite Info. Network, Inc.*, No. 09-CV-2497, 2010 WL 3932334, at *3 (S.D.N.Y. Sept. 29, 2010) (considering online article not attached to complaint "because it form[ed] the entire basis for Plaintiffs' claims, and Plaintiffs relied on and referred to the article in bringing their claims"); *Church of Scientology Int'l v. Time Warner, Inc.*, 806 F. Supp. 1157, 1159 (S.D.N.Y. 1992) (on motion to dismiss, court may consider article referred to in complaint even though article not attached to complaint).

Defendants seek consideration of three documents in support of their Motion to Dismiss: (1) Exhibit A, a fact sheet on radiation doses published on the website of the Environmental Protection Agency ("EPA"); (2) Exhibit B, a brochure containing technical specifications for the SecurPass; and (3) Exhibit C, a fact sheet on radiation-emitting security screening devices

published on the website of the Food and Drug Administration ("FDA").  (*See* Porter Decl. Exs. A-C.)[3]  Because the Court is permitted to take judicial notice of United States government publications, I will consider Exhibit A and Exhibit C in deciding this Motion.  *See Brooklyn Heights Ass'n*, 777 F. Supp. 2d at 432 n. 8; *Zappier*, 2006 WL 2621110, at *8 n.12.  The copy of the SecurPass brochure submitted by Defendants as Exhibit B, however, must be excluded.  Plaintiff did not incorporate or rely on the document in drafting his Complaint, and Exhibit B does not refer to matters of public record, the accuracy of which is reasonably unquestioned. *See Moore U.S.A., Inc. v. Standard Register Co.*, 139 F. Supp. 2d 348, 363 (W.D.N.Y. 2001) ("[C]ourts that consider matters of public record in a Rule 12(b)(6) motion are limited to things such as statutes, case law, city charters, city ordinances, criminal case dispositions, letter decisions of government agencies, published reports, records of administrative agencies, or pleadings in another action.").

   C. *Section 1983 Claims for Unconstitutional Conditions of Confinement*

   Section 1983 allows an individual to bring suit against persons who, acting under color of state law, have caused him to be "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws [of the United States]."  42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988).  The statute "itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).  To state a claim for relief under Section 1983, therefore, a plaintiff must plausibly allege the violation of a right protected under the Constitution or federal law.  *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

---

[3] "Porter Decl." refers to Declaration of Eric Porter in Support of Defendants' Motion to Dismiss.  (Doc. 14.)

While a convicted prisoner's claim that particular conditions of his confinement violate the Constitution is analyzed under the Eighth Amendment's proscription of cruel and unusual punishment, *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996), that prohibition does not apply to pretrial detainees, who may not be "punished" prior to an adjudication of guilt, *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009); *see Bell v. Wolfish*, 441 U.S. 520, 537-40 (1979). Instead, a pretrial detainee held in state custody receives protection against dangerous prison conditions under the Due Process Clause of the Fourteenth Amendment. *Caiozzo*, 581 F.3d at 69. While Plaintiff does not allege whether he was incarcerated at AMKC as a pretrial detainee or as a convicted prisoner, the standards for establishing a constitutional violation under the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment are identical in this context. *Id*. at 72 ("Claims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment."); *see United States v. Walsh*, 194 F.3d 37, 47-48 (2d Cir. 1999) (standard for excessive force claims arising under Eighth Amendment also applies to claims brought under Fourteenth Amendment).

1. Deliberate Indifference to a Risk of Harm to Future Health

To establish a constitutional violation based on a claim that prison officials placed an inmate's health in danger, the inmate must show that the defendants acted with "deliberate indifference" to a condition of confinement that is sure or very likely to cause serious harm. *See Florio v. Canty*, 954 F. Supp. 2d 227, 233 (S.D.N.Y. 2013) (citing *Helling v. McKinney*, 509 U.S. 25, 33 (1993)); *Smolen v. Fischer*, No. 12-CV-1856, 2012 WL 3609089, at *4 (S.D.N.Y. Aug. 23, 2012) (report and recommendation). This deliberate indifference standard is evaluated

under a two-pronged test comprised of both objective and subjective components.  *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996); *Jackson v. Goord*, 664 F. Supp. 2d 307, 315-16 (S.D.N.Y. 2009) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  First, "the deprivation alleged must be, objectively, sufficiently serious." *Farmer*, 511 U.S. at 834.  Second, "a prison official must have a sufficiently culpable state of mind." *Id.*; *see Trammell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003); *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001).

In this Motion to Dismiss, Defendants assert that Plaintiff does not state a claim under the Eighth or Fourteenth Amendments because he has not plausibly alleged that the objective prong of the test is met.  Under the objective prong of the deliberate indifference test, the measure of a "sufficiently serious" deprivation is "contextual and responsive to contemporary standards of decency." *Jackson*, 664 F. Supp. 2d at 316 (quoting *Hudson v. McMillian,* 503 U.S. 1, 8 (1992)).  For a claim based on an inmate's exposure to a harmful substance, the plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.  This inquiry "focuses on the danger posed by the material itself – that is, whether the nature and levels of [P]laintiff's exposure . . . [were] such as to pose 'an unreasonable risk' of serious damage to [his] health." *Jackson*, 664 F. Supp. 2d at 316 (citing *Helling*, 509 U.S. at 36); *Wright v. N.Y. State Dep't of Corr. Servs.*, No. 06-CV-3400, 2008 WL 5055660, at *10 (S.D.N.Y. Oct. 10, 2008) (report and recommendation) ("Exposure to unsafe levels of toxic substances, such as tobacco smoke or asbestos, may suffice as sufficiently dangerous conditions to satisfy the objective element of an Eighth Amendment claim.").  Inmates therefore do not have an unqualified constitutional right to an environment free of all harmful substances, but only a right to be free of involuntary exposure to a level of such substances which unreasonably endangers their future health. *See LaBounty v. Coughlin*, 137 F.3d 68, 74 n.5 (2d Cir. 1998)

("[M]ere exposure to moderate levels of asbestos is not actionable."); *Enigwe v. Zenk*, No. 03-CV-854, 2007 WL 2713849, *5 (E.D.N.Y. Sept. 14, 2007) ("Inmates do not have a constitutional right to be free of any or all levels of exposure to [environmental tobacco smoke], but only unreasonable levels of exposure."). In determining whether a risk of harm is unreasonable, a court must assess whether the risk is "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling*, 509 U.S. at 36 (emphasis in original).

Where a plaintiff plausibly alleges that prison officials acted with deliberate indifference to a substantial risk of serious harm posed by involuntary exposure to an unsafe condition, the inmate need not have suffered actual injury to state a constitutional violation. *See Helling*, 509 U.S. at 33 ("It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them."); *see also Warren v. Keane*, 196 F.3d 330, 332 (2d Cir. 1999) ("In *Helling*, the Court held that the Eighth Amendment prohibits prison officials from exhibiting deliberate indifference to future health problems that an inmate may suffer as a result of current prison conditions."); *LaBounty*, 137 F.3d at 72 (holding that exposure to friable asbestos can violate Eighth Amendment); *Pack v. Artuz*, 348 F. Supp. 2d 63, 73 (S.D.N.Y. 2004) ("In other words, plaintiff need not show that he suffered actual injury in order to satisfy the objective prong of his Eighth Amendment claim."). Indeed, the Supreme Court has held that the Constitution prohibits prison officials from exhibiting deliberate indifference to serious health risks, even where the inmate "shows no serious current symptoms." *Helling*, 509 U.S. at 33; *see Warren*, 196 F.3d at 332-33. Thus, a plaintiff states a cause of action by alleging that defendants have, with deliberate indifference,

exposed him to a condition that poses an unreasonable risk of serious damage to his future health. *Warren*, 196 F.3d at 333 (citing *Helling*, 509 U.S. at 35).

Plaintiff alleges that he was subjected to five SecurPass scans – or arguably ten, if he was scanned twice on each of the relevant occasions – and that each scan exposed him to a level of radiation that is either ten or fifty times higher than that emitted by the full-body scanners in use at airports. (Grabell at 4.) He further alleges that the correction officers responsible for conducting SecurPass scans of inmates are not trained to operate radiation-emitting devices. (Compl. at 6.) Finally, Plaintiff alleges that radiation damages the human body by causing genetic mutation, (Compl. at 3), and that exposure to any amount of radiation increases an individual's "lifetime risk of dying from cancer," (Grabell at 2).

According to the materials submitted by both Plaintiff and Defendants, all humans are constantly exposed to radiation from both man-made sources and natural sources, such as cosmic rays and minerals in the ground. (Porter Decl. Ex. A; Grabell at 2.) Thus, it is clear that – while exposure to any amount of radiation poses some risk of harm – society chooses to, and indeed must, tolerate some level of radiation exposure. *Cf. Helling*, 509 U.S. at 36. To determine whether the level of exposure alleged by Plaintiff violates the Eighth or Fourteenth Amendments, the Court must assess whether the radiation dose absorbed through five (or ten) SecurPass scans poses a risk of future harm "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Id.* (emphasis in original).

The Transportation Security Administration ("TSA") sets the dose emitted by its airport security scanners by reference to the annual limit on absorbed radiation set by the American National Standards Institute. (Porter Decl. Ex. C.) The dose of radiation emitted by these devices and all "general-use" X-ray security screening devices is so low that there is no need to

11

limit the number of screenings an individual can have in a year.[4] (*Id*.) In fact, a person receives more radiation from naturally occurring sources in forty-two minutes of ordinary living or two minutes of airplane flight than from a single scan of a TSA airport security scanner. (*Id*.) Even at its highest setting, the SecurPass therefore emits less radiation than one receives during a two-hour flight or a day-and-a-half of ordinary living. Furthermore, the radiation dose emitted in a single SecurPass scan is one-twenty-fourth of the dose in a single mammogram. (Porter Decl. Ex. A.)[5] Because the amount of radiation emitted in five SecurPass scans is less than that absorbed in a rount-trip cross-country flight, and well less than that absorbed in a single common medical procedure undergone by millions of people annually, exposure to this level of radiation is "a common fact of contemporary life" that society has clearly chosen to tolerate. *Pack*, 348 F. Supp. 2d at 79 n.13 (citing *McNeil v. Lane*, 16 F.3d 123, 125 (7th Cir. 1993)).[6] Such exposure therefore does not rise to the level of a constitutional violation. *See Helling*, 509 U.S. at 36.

  2. Verbal Abuse

Defendants also contend that Plaintiff's allegation that he was verbally belittled by the correction officers who operated the SecurPass does not state a claim under the Eighth or

---

[4] The FDA fact sheet submitted by Defendants as Exhibit C contains information on "general-use X-ray security screening systems," but it does not mention the SecurPass by name or state whether the SecurPass is classified as a general-use device. The fact sheet does identify the full-body airport security screening devices used by the TSA as general-use X-ray screening systems. It may be that the SecurPass is in fact a general-use device, but the Court will assume for purposes of this Motion that the information on general-use X-ray devices does not apply to the SecurPass and that the SecurPass emits ten or fifty times more radiation than general-use devices, depending on the setting chosen by the operator.

[5] The average annual radiation dose per person in the United States is about 620 millirem. (Porter Decl. Ex. A.) About 27 millirem of this annual dose comes from cosmic radiation, while 200 millirem comes from radon in the home. (*Id*.) A single mammogram emits about 30 millirem of radiation. (*Id*.) The safety standard for general-use X-ray security screening devices limits the dose per screening to 0.25 microsieverts, (Porter Decl. Ex. C), which translates to 0.025 millirem pursuant to the conversion tool found on the website of the United States Department of Health & Human Services (http://www.remm.nlm.gov/radmeasurement.htm (last visited Aug. 8, 2014)). Fifty times that dose is 1.25 millirem.

[6] Even ten scans, which I presume to amount to 12.5 millirem, is less than half of the difference in cosmic radiation experienced by residents of Denver (50 millirem annually) as opposed to residents at sea level (24 millirem annually). (Porter Decl. Ex. A.)

Fourteenth Amendment. To the extent that Plaintiff attempts to state a constitutional claim regarding this verbal abuse, his claim fails as a matter of law. *See Cole v. Fischer*, 379 F. App'x 40, 43 (2d Cir. 2010) (summary order) (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986)); *see also Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 325 (S.D.N.Y. 2006) ("[V]erbal intimidation does not rise to the level of a constitutional violation."); *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("[V]erbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional or reprehensible it might seem, does not constitute the violation of any federally protected right . . . .") (internal quotation marks omitted).

### D. Leave to Amend

In deference to Plaintiff's *pro se* status, the Court would normally grant him leave to amend the Complaint to cure its defects. Where an amendment would be futile, however, leave to amend is not required. *Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Plaintiff has been released from custody since filing this action, and there is no reason to believe that he could amend the Complaint to state that he was exposed to a significantly greater level of radiation than originally alleged. Plaintiff's failure to allege a likely risk of serious future harm is a substantive defect, and a liberal reading of the Complaint does not suggest that Plaintiff has a claim that he "has inadequately or inartfully pleaded and that [he] should therefore be given a chance to reframe." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013) (summary order) (leave to amend is futile where barriers to relief cannot be surmounted by reframing the complaint). The Court therefore finds that amending the Complaint would be futile and declines to grant Plaintiff leave to do so on its own motion.

### III. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED, and Plaintiff's claims are DISMISSED with prejudice. The Clerk of Court is respectfully directed to terminate the pending Motion, (Doc. 12), and close the case.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

**SO ORDERED.**

Dated: August 13, 2014
        White Plains, New York

                                            _____
                                            CATHY SEIBEL, U.S.D.J.